(September 13, 1912.)

W. T. BOOTH, Respondent and Appellant, v. C. W. COOPER, Appellant and Respondent.

[126 Pac. 776.]

QUIETING TITLE—ASSESSMENT OF TAXES—DESCRIPTION OF PROPERTY—DEFECTIVE TAX TITLE—VALIDITY OF.

(Syllabus by the court.)

1. Where lots were assessed as being in "Block 13, South Boise," and the plat of South Boise on file in the recorder's office contains no block 13, and where said lots were not in South Boise but were in "South Boise First Subdivision," as shown on the plat of South Boise First Subdivision, such description is so indefinite and uncertain as to invalidate said assessment, and a tax sale and assessor's deed in pursuance thereof does not convey the title to such lots.

2. The payment of subsequent assessments cannot correct a totally invalid and void description of the land assessed.

3. Where certain lots are described by number and block and are designated as being in "South Boise, Londoner's Addition," when in fact they were in "Londoner's First Subdivision," such description is not so defective as to make the assessment void, as said description indicates that said lots as assessed were in the vicinity of South Boise and in Londoner's Addition or Subdivision.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. John F. MacLane, Judge.

Action to quiet title to certain real estate. Judgment quieting title to a part of such real estate in plaintiff and part in defendant. *Affirmed.*

Edgar Wilson, Fremont Wood and Dean Driscoll, for Plaintiff and Appellant.

"A deed in which the description does not apply to the property sold is not a deed to the property, whatever may have been the intent of the parties in making it." (*Ozee v. City of Henrietta,* 90 Tex. 334, 38 S. W. 768.)

In such proceedings the provisions of the statute should be strictly followed. (*Warden v. Broome,* 9 Cal. App. 172, 98 Pac. 252; *Simmons v. McCarthy,* 118 Cal. 622, 50 Pac. 761.)

The description in the certificate of sale and the deed, and indeed throughout the entire proceedings, must be identically the same as that appearing on the original assessment-roll. (*Quivey v. Lawrence,* 1 Ida. 313; 1 Blackwell on Tax Titles, sec. 224.)

"A tax deed must describe the land conveyed with such reasonable certainty as to identify it without the aid of extrinsic facts." (27 Am. & Eng. Ency. of Law, 970; Cooley on Taxation, 2d ed., p. 404; *Tallman v. White,* 2 N. Y. 66; *Curtis v. Supervisors,* 22 Wis. 167; *Woodall v. Edward,* 83 Ark. 334, 104 S. W. 128; *Ontario Land Co. v. Wilfong,* 162 Fed. 99; *Miller v. Lundstrom,* 45 Fla. 473, 33 So. 521; *Sanford v. People,* 102 Ill. 374.)

"It is not sufficient that a similar description, in a contract or conveyance between individuals, might be shown by parol evidence to have been intended for particular premises. The description must be certain of itself, and not such as to require evidence *aliunde* to render it certain." (*Keane v. Cannovan,* 21 Cal. 297, 82 Am. Dec. 738; *Commercial Savings Bank v. Schlitz,* 6 Cal. App. 174, 91 Pac. 751; *Bosworth v. Danzien,* 25 Cal. 297, 300; *People v. Mahoney,* 55 Cal. 286.)

Where land is assessed by lots and blocks, and that only, reference must be had to some recorded map to make the description sufficient. (*Cadwalder v. Nash,* 73 Cal. 43, 14 Pac. 386; *Labs v. Cooper,* 107 Cal. 656, 40 Pac. 1042; *Miller v. Williams,* 135 Cal. 183, 67 Pac. 788; *Best v. Wohlford,* 144 Cal. 733, 78 Pac. 293; *Baird v. Monroe,* 150 Cal. 560, 89 Pac. 352; *Wright v. Fox,* 150 Cal. 680, 89 Pac. 832; *Fox v. Townsend,* 152 Cal. 51, 91 Pac. 1004, 1007; *Chapman v. Zobelein,* 152 Cal. 216, 92 Pac. 188; *Houghton v. Kern Valley Bank,* 157 Cal. 289, 107 Pac. 113; *McLauchlan v. Bonynge,* 15 Cal. App. 239, 114 Pac. 798.)

Even though sufficient to notify the owner and the public, the description must identify the property. (*Palomares Land Co. v. Los Angeles Co.,* 146 Cal. 530, 80 Pac. 931.)

Griffiths & Griffiths, for Defendant and Appellant.

"The office of a description is not to identify the land, but to furnish the means of an identification, and a deed will not be declared void if the land can, with any reasonable degree of certainty, be identified from the description aided by extrinsic evidence." (*Lara v. Peterson,* 56 Wash. 70, 105 Pac. 160; *Goodrow v. Stober,* 80 Kan. 597, 102 Pac. 1089; *Herod v. Carter,* 81 Kan. 236, 106 Pac. 32.)

No informality in the assessment, or mistakes in relation to the ownership, will render an assessment or tax proceeding void or voidable, or affect the sale, and a substantial compliance with the provisions of the law is all that is required. (*Co-operative Sav. & Loan Assn. v. Green,* 5 Ida. 660, 51 Pac. 770.)

No other plat was of record to which these names could by any possibility apply, and there were no other tracts of land which could, by any possibility, have answered these descriptions. Therefore, the errors were unimportant and the tax proceedings and tax deeds valid. (*Bank of Lemoore v. Fulgham,* 151 Cal. 234, 90 Pac. 936; *Fox v. Wright,* 152 Cal. 59, 91 Pac. 1005; *Carson v. Platt,* 76 Kan. 636, 92 Pac. 705; *Bacon v. Rice,* 14 Ida. 107, 93 Pac. 511; *Best v. Wohlford,* 153 Cal. 17, 94 Pac. 98; *Stevens v. Doohen,* 50 Wash. 145, 96 Pac. 1032; *Glenn v. Stewart,* 78 Kan. 605, 97 Pac. 863; *Abel v. Swain,* 12 Ariz. 421, 100 Pac. 831; *Halbouer v. Cuenin,* 45 Colo. 507, 101 Pac. 763; *Gunn v. Bromer,* 81 Kan. 242, 105 Pac. 702; *Lecompte v. Smith,* 82 Kan. 543, 108 Pac. 810; *Stanton v. Hotchkiss,* 157 Cal. 652, 108 Pac. 864; *Nesbit v. Bearman,* 83 Kan. 122, 109 Pac. 1085; *Griggs v. Hartzoke,* 13 Cal. App. 429, 109 Pac. 1104; *Plummer v. Gibson* (Kan.), 116 Pac. 618.)

The rule set forth in the Bacon case was commented upon in the later cases of *Stewart v. White,* 19 Ida. 60, 112 Pac. 677, and *McGowan v. Elder,* 19 Ida. 153, 113 Pac. 102, and the reasons and rules were approved and confirmed.

SULLIVAN, J.—This action was commenced by the plaintiff Booth to quiet title to lots 1 to 10, inclusive, in block 13, South Boise First Subdivision, and lots 1, 2, 3 and 4, in block 37, and lots 25 to 32, inclusive, in block 40, Londoner's First Subdivision, as said lots are described in the respective plats filed in the recorder's office of Ada county. The defendant Cooper answered and claimed title to all of said lots under tax deeds acquired by reason of the nonpayment of delinquent taxes assessed against said lots.

The cause was tried by the court and findings were made quieting the title in the plaintiff Booth to said lots 1 to 10, inclusive, in block 13, South Boise First Subdivision, and quieting the title in the defendant Cooper to said lots above described in blocks 37 and 40, Londoner's First Subdivision. The plaintiff Booth appeals from that part of the decree quieting the title to said lots in blocks 37 and 40, London-

er's First Subdivision, in Cooper, and the defendant Cooper appeals from that part of the decree which quiets title to lots 1 to 10, inclusive, in block 13, South Boise First Subdivision, in Booth.

The appeals are from the judgment on the judgment-roll alone. No part of the evidence is contained in the record. The facts are to be taken as found in the findings of the trial court.

(1) It appears from said findings that said lots 1 to 10, inclusive, block 13, were assessed in 1893, to Henry Wymer as owner, as being in South Boise in Ada county. Said taxes were not paid and the lots were sold for that year's taxes under the description given them on the assessment-roll as above stated. A tax certificate was issued therefor to C. W. Cooper and a tax deed thereafter executed by the assessor and tax collector to Cooper, describing the lots as above indicated. The court found that there was no South Boise in Ada county at the time said assessment was made, but that there was land subdivided and described upon a plat filed in said recorder's office as "South Boise," but said plat did not contain any block numbered 13; that there was filed in the recorder's office of Ada county a platted tract of land marked on the plat as "South Boise First Subdivision," and that such plat did not include any part of South Boise as platted and subdivided as "South Boise," and upon the findings made in regard to said lots numbered from 1 to 10, inclusive, in said block 13, the court found as a conclusion of law that Booth was entitled to a judgment and decree quieting title in himself as against Cooper to said lots in block 13 in "South Boise First Subdivision," and that conclusion and decree were based upon the proposition that said assessment of said lots was indefinite and uncertain, and for that reason was not a sufficient description of said lots to convey any title thereto under said tax deed.

It appears that there were at least three plats filed of lands that had been platted in what is now known as South Boise. One plat was named "South Boise" and contained certain lands subdivided. That plat did not contain a block

numbered 13. Another tract of land was platted as "South Boise First Subdivision," which plat did not include any part of the land platted as "South Boise." A third plat was designated as "Londoner's First Subdivision," and contained none of the land included in either of the other plats.

Said lots from 1 to 10, inclusive, in said block 13, were in "South Boise First Subdivision" and not in a part of the land platted as "South Boise"; hence as said lots were not in the "South Boise" tract, but were assessed as being a part of that tract, the description is clearly insufficient to describe said land either for taxing purposes or for conveying any title thereto by such description. It is as clearly defective and incorrect as it would be to describe a forty-acre tract of land as being in section 10 when in fact it was in section 5. Said lots being assessed under such a defective description, the taxes so assessed became no lien upon said lots. That description is not sufficient to identify said lots and land and the assessment is therefore void. Had a person gone to the recorder's office of said county and called for the plat of South Boise, on an examination thereof he would have ascertained that it contained no block No. 13. The court, therefore, did not err in quieting title to said lots in the plaintiff Booth.

It is suggested that the payment of taxes for several years subsequent to a tax sale may validate a wrong or invalid description of property on the tax-roll. We cannot agree with that contention, as it is clear to us that subsequent payments of taxes on land that is not correctly described on the tax-roll cannot correct or in any way validate such wrong description. If the description given on the tax-roll is not sufficient to convey the title to the land, the description cannot be corrected by payment of subsequent assessments.

(2) The court found that the defendant Cooper was the owner of said lots 1 to 4, inclusive, in said block 37, and lots 25 to 32, inclusive, in said block 40, in Londoner's First Subdivision; that said lots in Londoner's First Subdivision

were assessed to R. D. Milner for the year 1893, as being in "South Boise, Londoner's Addition"; that said lots and blocks corresponded to lots and blocks in Londoner's First Subdivision, which was a subdivision of land in the vicinity of South Boise; that the taxes so assessed became delinquent and the property was sold and proper certificates and deed were issued to the defendant Cooper to said lots, and as a conclusion of law found that defendant Cooper was entitled to have his title quieted to said lots as against the plaintiff Booth. This part of the decree evidently proceeds upon the theory that the description of said lots and blocks as being in South Boise. Londoner's Addition (when in fact they were in "Londoner's First Subdivision"), was not so defective as to make the assessment void, and entered a decree quieting the title thereto in Cooper. The description indicated that said lots were in the vicinity of South Boise and in Londoner's Addition. While the description in said assessment was not exactly in accordance with the name given to the plat which contained a description of said lots, the lots and blocks were correct when applied to Londoner's First Subdivision, and as there was no other plat bearing the name of "Londoner's," the court evidently concluded that said description was not so defective as to mislead anyone as to the location of said lots. Had a person gone to said recorder's office and called for the plat of South Boise. Londoner's Addition, he would have found no plat by that name on file in said office, but no doubt would have been handed the plat of Londoner's First Subdivision and would have found thereon the lots and blocks described on said assessment-roll as being in South Boise, Londoner's Addition. While that description is indefinite, it is not so uncertain as to invalidate said assessment. That being true, we think the court did not err in quieting the title to said lots in the defendant Cooper.

We therefore conclude that the judgment and decree of the lower court must be affirmed, and it is so ordered, each party to pay one-half of the costs of this appeal.

Ailshie, J., concurs.

STEWART, C. J., Dissenting.—I am unable to agree with the majority opinion in their discussion of the questions involved in this case, and the conclusion reached as to the sufficiency of the descriptions of the respective properties assessed and involved, and the legal effect of such descriptions. The facts may be conceded as stated in the majority opinion, but the law governing such facts seems to have been entirely overlooked in that opinion, and no consideration whatever given to the matter other than the general conclusion stated in the opinion, and to state my position clearly I desire to call attention to the various provisions of the law and the general rule of law governing cases of this kind.

Sec. 1682, Rev. Codes, requires the assessor to exact from each person a statement under oath setting forth specifically all the real property owned by each person within the county where such property is located on the day of assessment, and such statement is required to be in writing, showing specifically (1) all property belonging to, claimed by, or in possession of, each person; (4) the county, town, city, etc., in which such property is situated or in which it is liable to taxation; (5) an exact description of all lands in parcels.

The foregoing statement is required to be exacted by the assessor, and is presumed to be made by each person owning property or having property under his control, and is to be in writing, and when the assessor of Ada county made his assessment for the year 1893, it will be assumed by this court, in the absence of any showing to the contrary, that such statement was required by the assessor and that the owners of the property in controversy in this case, to wit, Wymer and Milner, presented to the assessor lists of the property owned by each and gave a proper and correct description of the same. Whether this statement in fact was made does not determine, however, the validity of the assessment, for it is further provided by sec. 1688, Rev. Codes: "If any person, after demand made by the assessor, neglects or refuses to give, under oath, the statement therein provided for, or to comply with the other requirements of this chapter, the assessor must note the refusal on the assessment-

book, opposite his name, and must make an estimate of the value of the property of such person, and the value so fixed by the assessor must not be reduced by the board of commissioners.'' This assessment-book prepared by the state auditor is required, under the provisions of sec. 1718, to show: ''Such listing shall include . . . . city and town lots, naming the city or town and the number of the lot and block, according to the system of numbering in such city or town, and improvements thereon '' These are the only statutory provisions which in any way attempt to specify the manner of describing real property in the statement of the owner and upon the assessment-roll.

The discrepancy between the description of the property assessed and placed upon the assessment-roll and the true description may have arisen by reason of a wrong description placed in the statement made by the owners to the assessor in 1893, if such statement was in fact made; or if such statement was not made, it may have arisen by the assessor applying to such property a common name rather than the true description as disclosed by the maps and plats on file.

Conceding, then, that Wymer and Milner were the owners of the property in controversy, and that the title to such property passed to them by true descriptions as disclosed by such maps and plats, they were advised that under the laws of this state such property was subject to assessment the same as all other property in the state, and it was their duty to report such property to the assessor for assessment; and they were also aware of the provisions of the law, that if such property was not reported and listed for assessment, the assessor had power to place the same upon the assessment-roll. Being such owners, if inquiry had been made at the assessor's office, the assessor's book would have shown that they were assessed with real property, and that in such assessment it was misdescribed.

The assessor in placing such property upon the tax-roll no doubt had in mind the land owned by Wymer and Milner, and attempted to describe such property. Wymer and Mil-

ner knew that they owned certain tracts of land, and if any inquiry at all had been made by them of the assessor for the purpose of ascertaining whether such property was in fact assessed, or with the view of paying the taxes for which such land was subject, they would have ascertained that they were assessed with real property, although not correctly described, but that the description in many respects was similar to the true description. The misdescription could in no way mislead them, but, on the contrary, did give notice of an attempt in the description to describe tracts of land belonging to the respective parties, although the description was not correct. There was no other land assessed to Wymer and Milner for that year under the true description, or under any other description than that made by the assessor. The pleadings and the findings of the court in no way indicate any other piece or parcel or tract of land in any subdivision or addition designated upon any plats or maps filed in the recorder's office of Ada county, except as shown in the findings; neither is there any showing that there is any piece or parcel or tract of land in Ada county, except the land of Wymer and Milner, that could have answered the description of such land shown upon the assessment-roll and described in the certificate and tax sale and also the deed. The property was described as in Ada county, state of Idaho, and the first description gave the correct lots by number, and designated the same as "block 13, South Boise," while in truth there was no plat or property platted as South Boise, but there was land subdivided and described on the plats as "South Boise First Subdivision," but such land did not include any part of South Boise as platted and subdivided; while in the other two descriptions the only difference in the description used upon the assessment-roll and the true description is the use of the word "Addition" instead of "First Subdivision."

These different tracts of land were apparently surveyed and maps and plats were made and recorded in Ada county, and no other survey was shown and no other plats were of record to which these names could by any possible theory

be applied.   In the face of this description there is no show-ing of facts that the owners of said property made any in-quiry during the year 1893 as to whether the property owned by them had been listed or assessed, or offered in any way to pay taxes upon the property owned by them, or offered to discharge the duty imposed by law, until the year 1904.

This court, in a long line of decisions, has announced the doctrine in this state governing the assessment and sale of property for taxes as follows: ''Where property is subject to taxation, a substantial compliance with the requirements of the law in making assessments of taxes and in the pro-cedure under the statute leading up to the issuing of a tax deed is all that is required, and the mere failure of officials to perform the duty required of them by law cannot be taken advantage of by a property owner for the sole purpose of escaping such taxation; there must be prejudice and injury to such owner.''   The decisions of this court are collated and cited in the case of *Armstrong v. Jarron,* 21 Ida. 747, 125 Pac. 170.

In the same case the decisions of this court are also cited with many others, and the general rule stated to be: ''But where omissions and errors have been made in assessments and sales of property for delinquent taxes, and such questions are not jurisdictional and are mere legislative directions in such proceedings, and by such omissions and errors the prop-erty owner is prejudiced, then such facts may be shown to defeat the tax title.''   And in the latter case the court ap-proves the rule announced by this court in *Parsons v. Wrble,* 21 Ida. 695, 123 Pac. 638: ''If he allows his property to go for four continuous years without paying any taxes on it and fails to call on the tax collector during the three years of redemption, it would seem that the failure to make the red ink entry of the assessment would in no way prejudice him or affect his substantial rights in the least.''

So in the case at bar, Wymer and Milner were the owners of the property in controversy in the year 1893, and as such owners knew that such property was assessable.   How long such property remained the property of Wymer and Milner

and when Booth became the owner of such property is not shown by the record; but it does affirmatively appear that the owners of said property, whoever they were, permitted and allowed such property to go without paying any taxes on it and permitted the purchasers at tax sale to pay the taxes from the year 1894 continuously to the year 1904, inclusive, and failed to call on the tax collector during such period of time for the purpose of making inquiries as to whether or not the property owned by them had been assessed and placed upon the tax-roll, and that during such period of time such owners did not report or include said property in a statement of property owned and subject to taxation, as required by law, to the assessor for the purpose of taxation.

The general rule governing descriptions of real property upon tax-rolls for assessment purposes is, to my mind, clearly stated in 27 Am. & Eng. Ency. of Law, p. 684: ''It is not absolutely necessary that each description be complete in itself. It will suffice if it can be made certain by recourse to records, maps, plats or other available documents, incorporated into it by reference to general descriptive matter at the head of the column in which it appears, or elsewhere in the assessment-roll, or to other descriptions with which it is grouped.'' The description may be explained and applied by parol evidence, and while such evidence should not be received to supply a description wholly insufficient, yet such evidence may be received and should be considered in determining whether the description used is sufficient to identify the property, and this general principle seems to be well recognized by the decisions that have been given by this court in tax title cases.

Examining the entire record in this case, I am unable to see any facts or equity in favor of the appellant Booth. I am clearly of the opinion that the description of the land in the assessment-roll and in the tax certificate and tax deed has clearly afforded the means of identification intended by the statutes of this state.

For the foregoing reasons I believe that the judgment in this case quieting title in favor of Booth should be reversed, and that the judgment in favor of Cooper quieting his title to the property awarded him by the trial court should be affirmed.